UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NELSON BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23CV675 HEA |
| | ) | |
| MERIDIAN MEDICAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPIN ION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Partially Dismiss Plaintiff's First Amended Complaint, [Doc. No. 21]. Plaintiff has filed a response in opposition to the Motion, to which Defendant has filed a reply. For the reasons set forth below, the motion will be granted.

### Facts and Background[1]

Plaintiff's First Amended Complaint alleges the following:

Plaintiff is a 62-year-old African American male who is employed by Defendant as a Production Mechanic at Defendant's Brentwood campus. He has been employed by Defendant from June 1979 through the present.

---

[1] The recitation of facts is set forth for the sole purpose of this Opinion. It in no way relieves the parties of the necessary proof of the facts in later proceedings.

Defendant is a manufacturing company which develops and produces a variety of auto-injector delivery devices for emergency medical needs, and which is incorporated under the Laws of the State of Maryland. Defendant further operates manufacturing plants in Saint Louis County, Missouri located at 1945 Craig Road, Maryland Heights, MO 63146, as well as one located at 8030 Litzsinger Road, Brentwood, MO 63144.

Plaintiff has worked for Meridian for over forty (40) years. Until recently, Meridian offered its mechanics an Incentive Program which follows a specific progression based on an employee's knowledge and demonstrated skills. The Incentive Program rewards mechanics with a higher rate of pay for advancing their own training. The Incentive Program specifically provided for a pay raise for mechanics who received training, and whose training was confirmed by management, on the Auto-Injector Filling Machine ("AIFM").

Despite Plaintiff's being the senior-most employee within Meridian's Brentwood campus, he did receive adequate training on the AIFM. Because Plaintiff had not received adequate training on the AIFM, he did not qualify for the Incentive Program pay raise. In order to take advantage of the Incentive Program, Plaintiff requested on numerous occasions to be trained on the AIFM. Over the years, Plaintiff has continuously made several requests for training on the AIFM in order to take advantage of the Incentive Program. Plaintiff was promised by some

in management, as well as HR, that he is entitled to and would be trained on the

AIFM at a future date.

At the time of filing his Charge of Discrimination, Plaintiff received training

on the AIFM on an inconsistent basis, making it nearly impossible for him to

complete his training. At the same time Plaintiff was requesting opportunities to

train on the AIFM, others with less tenure were provided the opportunity and

completed the training process earning the extra compensation. Plaintiff believes

these employees were Caucasian. Most, if not all, of the other above-referenced

employees were under the age of 40 years.

Plaintiff has complained of the apparent difference in treatment between

himself and other employees to not only his direct supervisors, Mr. Hamm and Mr.

Tappendorf, but also to Meridian's HR department and through the filing of a

grievance with Plaintiff's union. After each such complaint has been made,

Plaintiff has been the recipient of additional discriminatory behavior by Mr.

Thomas either directly, or indirectly.

Plaintiff believes Mr. Thomas has provided to other decision makers

erroneous and misleading information about Plaintiff, Plaintiff's character, and

Plaintiff's work ability. Mr. Thomas has gone out of his way to give Plaintiff a hard

time, including any time Mr. Thomas sees Plaintiff working on anything of value

when he remarks, "Who told you to do that? That's not your job." Mr. Thomas has

been able to continue his belittling treatment of Plaintiff for years, resulting in

Plaintiff's having not been able to work any jobs that utilize his education and

knowledge and being assigned only menial jobs instead.

Another example of Mr. Thomas' overzealous focus on Plaintiff and

Plaintiff's work occurred on or about December 23, 2020, when Mr. Bruce, the

Third Shift Supervisor, wanted someone to go look at Room 96/105 because the

Clean Room pressure was out of specification. In response to Mr. Bruce's request,

Plaintiff went into room 96 and closed the vents manually because the adjustments

were broken and Plaintiff finished adjustments. This is an issue Plaintiff had earlier

informed Mr. Thomas about to which Mr. Thomas seemed nonchalant about it as it

was coming from Plaintiff.  While Plaintiff was still in the locker room, Mr. Nathan

Keller and Ms. Shannon Patterson asked Plaintiff if he had been to room 96, to

which Plaintiff confirmed he had and explained about the broken vent adjustment

and that Plaintiff had to manually adjust it and it should be in specification now.

Mr. Keller informed me that he let Mr. Thomas know that Plaintiff was over

there addressing the issue, but Mr. Thomas insisted that Mr. Keller and Ms.

Patterson head over there anyway. Afterwards, Mr. Keller informed Plaintiff that

Mr. Keller did not have to make any adjustments to Plaintiff's work because the

room pressure was in specification. Plaintiff believes Mr. Thomas only sent Mr.

Keller and Ms. Patterson, both of whom are Caucasian, over to check on Plaintiff's

work due to my race or color. Mr. Thomas is not in the habit of having other employees check the work of other mechanics who are Caucasian. Plaintiff was treated by the Defendant differently from his other coworkers due to his race because of Mr. Thomas' conduct directed toward Plaintiff. Plaintiff was treated by the Defendant differently from his other coworkers due to his color because of Mr. Thomas' conduct directed toward Plaintiff.

Plaintiff was treated by the Defendant differently from his other coworkers due to his age because of the conduct of Mr. Thomas, Mr. Hamm, and Mr. Tappendorf directed toward Plaintiff in connection with his not receiving adequate opportunities to train on the AIFM.

From December 2018, Defendant treated Plaintiff differently because of his race, color, and/or age. Throughout his career with Meridian, Plaintiff's efforts and work product were viewed favorably and valued by Defendant Meridian and met Meridian's job expectations. This conduct of the Defendant toward Plaintiff was motivated by Plaintiff's race, color, and/or age.

Plaintiff has yet to receive a pay raise for completing the Incentive Program and the AIFM training, despite his continuous request for opportunities to complete the training. Because Plaintiff has not been given a fair opportunity to earn the pay raise associated with training on the AIFM through the Incentive Program,

Plaintiff filed a charge of discrimination against Defendant with the EEOC and requested that it be dually filed with the Missouri Commission on Human Rights. He claimed he was subjected to discrimination by Thomas and oytherts based on his race, color, and age beginning December 2018 and on a continuing basis since. He claimed Thomas assigned him undesirable tasks. He also claimed management pressured him to complete tasks under the MIP, but prevented him from the necessary training, also stating that colleagues with less seniority were given the opportunity to train.

The EEOC issued a Right to Sue letter on September 26, 2022. This action was filed on December 22, 2022.

Plaintiff's First Amended Complaint sets out the following claims: race Discrimination in violation of the Missouri Human Rights Act, ("MHRA") Count I; age discrimination in violation of the MHRA, Count II; color discrimination in violation of the MHRA, Count III; race discrimination in violation of Title VII of the Civil Rights Act for acts occurring on or after May 7, 2020, Count IV; color discrimination in violation of Title VII of the Civil Rights Act for acts occurring on or after May 7, 2020, Count V; ae discrimination in violation of the Age Discrimination in Employment Act ("ADEA") for acts occurring on or after May 7, 2020, Count VI.

Defendant moves to dismiss Plaintiff's Title VII and ADEA counts to the extent these claims rely on allegations occurring more than 300 days before he filed charge of discrimination with the EEOC on March 3, 2021, *i.e.* before May 25, 2020. Defendant also moves to dismiss all of Plaintiff's MHRA claims since he did not obtain a Notice of Right to Sue from the Missouri Commission on Human Rights until after the two-year statute of limitations, which was issued on January 19, 2023.

## Legal Standard

In order "[t]o survive a motion to dismiss, a complaint must plead sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible if the plaintiff pleads facts that allow the court to draw the reasonable inference that the Defendants is liable for the misconduct alleged." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc*., 59 F.4th 948, 953 (8th Cir. 2023) (internal quotation marks and alteration omitted) (quoting *Iqbal*, 556 U.S. at 678)). "If, on the other hand, the plaintiff pleads facts that are merely consistent with a Defendants' liability, the complaint stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotation marks and citation omitted); accord *Edwards*, 58 F.4th at 377 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (quoting *Iqbal*, 556 U.S. at 679).

In deciding whether a complaint satisfies the plausibility test, the Court must "accept 'as true the complaint's factual allegations and grant[ ] all reasonable inferences to the non-moving party.'" *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (alteration in original) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)). This rule "is inapplicable to legal conclusions," which the Court may disregard. *Iqbal*, 556 U.S. at 678. Likewise, "'naked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). With few exceptions, the Rule 12(b)(6) analysis is constrained to factual matter alleged in the complaint. See *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) ("[T]he court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Id.* (citations omitted)).

## Discussion

## Title VII and ADEA

Defendant argues that Plaintiff's Title VII and ADEA claims, which rely on events which occurred prior to May 25, 2020 are time barred.

To exhaust administrative remedies under Title VII and the ADEA, Plaintiff must: (1) timely file a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and establish the facts and nature of the charge, and (2) receive notice of her right to sue from the EEOC. *Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000); *Moses v. Dassault Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 919 (8th Cir. 2018).

Plaintiff must file a charge with the EEOC within one hundred and eighty days after "the alleged unlawful employment practice" occurred, or within 300 days after the alleged unlawful employment practice if Plaintiff initially instituted proceedings with a state or local agency. 42 U.S.C. § 2000e-5(e)(1).

Attempting to plead a claim based on harassment prior to the limitations cutoff is not enough. The Court must also consider whether the First Amended Complaint sets out claims for a "continuing violation" which in this case would allow relief for harassment before the limitations cutoff.

As the Eighth Circuit Court of Appeals recently reiterated, "Because a hostile work environment consists of a series of separate acts, [a plaintiff] only needed to file his [administrative] charge within 300 days of at least one act that is part of the hostile work environment." *Slayden v. Ctr. for Behav. Med.*, 53 F.4th

464, 467 (8th Cir. 2022) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117–18 (2002)). "If that requirement is met, a party may then recover for all illegal acts that made up the hostile work environment." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 526 (8th Cir. 2019) (quoting *Madison v. IBP, Inc.*, 330 F.3d 1051, 1061 (8th Cir. 2003)). However, there must be some relationship among the alleged incidents of harassment before and after the limitations cutoff to find a "continuing violation."

The continuing violation doctrine does not apply to discrete acts. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–13 (2002); *High v. Univ. of Minn.*, 236 F.3d 909, 909 (8th Cir. 2000) (per curiam) (refusing to apply continuing violation doctrine to discrete employment actions). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *Morgan*, at 114 (internal citation omitted). Administrative remedies must be exhausted as to each individual unlawful employment practice. See *id*. at 114–15 (treating each discrete discriminatory action separately). "The key is that the scope of a judicial complaint can be no broader than the scope of the EEOC investigation that 'could reasonably be expected to grow out of the charge' in the EEOC complaint." *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 945 (8th Cir. 2021) (quoting *Wedow v. City of Kansas City*, 442 F.3d 661, 674 (8th Cir. 2006)).

The Eighth Circuit requires that "[e]ach incident of discrimination and each retaliatory adverse employment decision ... be individually addressed before the EEOC" to be considered sufficiently related to a properly exhausted claim. *Id*. at 944 (quoting *Sellers v. Deere & Co*., 791 F.3d 938, 943 (8th Cir. 2015)). When deciding whether a plaintiff has exhausted her administrative remedies, the Eighth Circuit "liberally construe[s]" the allegations in the EEOC charge, but it recognizes "a difference between liberally reading a claim which lacks specificity, and inventing ... a claim which simply was not made." *Sellers*, 791 F.3d at 943 (citation omitted); see also *Wedow*, 442 F.3d at 672–73 (explaining the Eighth Circuit has "considerably narrowed [its] view" over time of what it means for a plaintiff's claims to be "like or reasonably related to" those in the EEOC charge).

Failure to exhaust administrative remedies "is an affirmative defense that defendants bear the burden to plead and prove." *Roiger v. Veterans Affs. Health Care Sys.*, No. 18-cv-591 (ECT/TNL), 2019 WL 572655, at *7 (D. Minn. Feb. 12, 2019); see also, e.g., *Tyler v. Univ. of Ark. Bd. of Trs*., 628 F.3d 980, 989–90 (8th Cir. 2011) (addressing exhaustion at the summary judgment stage). Nonetheless, dismissal under Rule 12(b)(6) is appropriate if the plaintiff's EEOC charge shows that he has not exhausted a claim. See *Brooks*, 655 F.3d at 801; see also *Richter v. Advance Auto Parts, Inc*., 686 F.3d 847, 851–52 (8th Cir. 2012); *Blakley,* 648 F.3d

11

at 931 (explaining that courts may consider an EEOC charge at the pleading stage without converting a motion to dismiss into one for summary judgment).

Although Plaintiff states in conclusory fashion that the discrimination he experienced was "continuing," the First Amended Complaint sets out discrete acts of alleged discrimination: retaliation after reporting discrimination in 2019, not receiving training other Caucasian employees received and incentive pay as a result of the special training; and his work being checked by two Caucasian employees on one occasion in 2020. These isolated events cannot form the basis of a continuing hostile environment sufficient to overcome the 300-day time limitation.

The purpose of the continuing violation doctrine is to enable a plaintiff to include conduct that occurred outside of the limitations period into a timely filed claim—for example, for a hostile work environment claim. See *Nat'l R.R. Passenger Corp*., 536 U.S. at 115–18. Because Plaintiff did not file such a claim, and because the continuing violation doctrine does not apply to discrete acts, the doctrine does not apply here.

**Missouri Human Rights Act**

The Missouri statute requires that any person claiming to be aggrieved under the MHRA file a verified complaint with the Missouri Human Rights Commission ("MHRC") "within one hundred eighty days of the alleged act of discrimination"

RSMO § 213.075.1. Failure to do so "shall deprive the [MHRC] of jurisdiction to investigate the complaint." Missouri statute also requires a plaintiff to sue an employer, if at all, no more than ninety days after issuance of a right-to-sue letter, but not more than two years after the complained-of conduct. RSMO § 213.111.1.

Missouri Courts, however, recognize the continuing violation theory, under which "a victim of discrimination may pursue a claim for an act occurring prior to the statutory period, if she can demonstrate the act is part of an ongoing practice or pattern of discrimination by her employer." *Plengemeier v. Thermadyne Indus.*, Inc., 409 S.W.3d 395, 401 (Mo. Ct. App. 2013).

The continuing violation doctrine constitutes an equitable exception to the statute's timeline that courts must apply sparingly. *Bozue v. Mut. of Omaha Ins. Co.*, 536 F. Supp. 3d 438, 449 (E.D. Mo. 2021). A continuing violation theory requires that at least one allegedly unlawful act occur within the statutory filing period and that the conduct at issue reflects an ongoing, interrelated series of events. *Plengemeier* at 409.

Plaintiff alleges December 23, 2020 as the last discriminatory act during his employment with Defendant. He filed this action on December 22, 2022, *prior* to the date of receiving the Notice of Right to Sue from the MCHE which was issued on January 19, 2023, i.e., Plaintiff filed his MHRA claims *before* he received his right to sue letter.  Plaintiff argues since his action was pending when he received

13

the Right to Sue letter, his action is timely. This argument is without merit. Plaintiff failed to obtain a Right to Sue letter prior to filing his lawsuit. His claims, therefore, were unexhausted and must be dismissed.  "A party cannot bring a lawsuit under the MHRA before receiving a Right to Sue Letter against the respondent named in the charge of discrimination. RSMo. § 213.111.1; and *Public Sch. Ret. Sys. of Sch. Dist. of Kan. City v. Mo. Comm'n on Human Rights*, 188 S.W. 3d 35, 43-44 (Mo. App. 2006)." *C.R.K. by & through A.L.K. v. Springfield R-XII Sch. Dist*., 2023 WL 3984299, at \*2 (W.D. Mo. June 13, 2023).

## Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 21], is granted.

**IT IS FURTHER ORDERED** that Plaintiff's Title VII and ADEA claims, (Counts IV-VI) are dismissed to the extent they are based on discrete acts of discrimination occurring more than 300 days before Plaintiff's EEOC charge was filed.

**IT IS FURTHER ORDERED** that Plaintiff's MHRA claims (Counts I-III) are dismissed as time-barred.

Dated this 28th day of August,  2024.

14

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE