UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NELSON BROWN, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23CV675 HEA |
| MERIDIAN MEDICAL TECHNOLOGIES, INC., | ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment. [Doc. No. 56]. The motion is fully briefed and ripe for review. For the reasons below, the Court grants the Motion.

*Background*

Plaintiff brought this action in the Circuit Court of the County of St. Louis, Missouri on December 22, 2022, alleging violations of the Missouri Human Rights Act, RSMo §§ 213.010, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000€, *et seq*, and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq*. based on Plaintiff's race, color, and age. Defendant removed the matter on May 19, 2023, based on the Court's diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. Defendant now moves for summary judgment.

## *Summary Judgment Standard*

The standard applicable to summary judgment motions is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. *City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1030 (8th Cir. 2000); *Allen v. Entergy Corp.*, 181 F.3d 902, 904 (8th Cir. 1999). The non-moving party "must do more

2

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Anderson*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact, *see Crossley v. Georgia-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005).

### *Undisputed Facts*

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that]...raise a genuine issue for trial.' " *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (citation omitted). The nonmoving party asserting a factual dispute "must support the assertion by:

(A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). If the nonmoving party fails to address the moving party's assertion of fact as required by Rule 56(c), the court may (1) "consider the fact undisputed for purposes of the motion;" or (2) "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2).

Additionally, Local Rule 4.01 requires:

Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response

4

must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party. E.D.Mo. L.R. 4.01

In support of its motion for summary judgment, Defendant submitted a statement of uncontroverted material facts. Plaintiff did not respond to the statement of uncontroverted facts or provide the Court with a statement of material facts as to which he contends a genuine dispute exists.

Based on Plaintiff's failure to respond to Defendant's Statement of Material Facts, the Court will consider the facts as undisputed under Rule 56 and Local Rule 4.01 to the extent the facts are properly supported by the record. *Deichmann v. Boeing Co.*, 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), aff'd, 232 F.3d 907 (8th Cir. 2000). Cf. *Nw. Bank & Tr. Co. v. First Illinois Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003) (holding that the district court did not abuse its

discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

Defendant Meridian operates manufacturing plants in Saint Louis County, State of Missouri, located at 1945 Craig Road, Maryland Heights, MO 63146 Saint Louis County, State of Missouri as well as one located at 8030 Litzsinger Road, Brentwood, MO 63144 in Saint Louis County, State of Missouri.

Plaintiff Nelson Brown is a 64-year-old African American Male who Defendant Meridian employs as a Production Mechanic at Defendant Brentwood campus. Meridian has employed Plaintiff from on or about June 1979 through the present.

Meridian was named Cartrex Purential System at the time of the Plaintiff's hire and was converted to Survival Technology shortly thereafter. Plaintiff's job title at the time of his hire was Setup Mechanic. Plaintiff remained a Setup Mechanic for a period of three (3) to five (5) years. Plaintiff's job title changed to Maintenance Mechanic for the next ten to fifteen years. Around 2004, Plaintiff became a Production Mechanic and has held this job title for roughly twenty (20) years.

Plaintiff is currently employed by Kindeva, which was formerly known as Meridian Technologies, and Pfizer prior to that. The Company currently employs

Plaintiff as a Production Mechanic. Plaintiff has worked at the Company's Brentwood location for the entirety of his employment.

Plaintiff's current hourly rate is $39.18 per hour. Plaintiff testified that over the past three years, his pay has been roughly $130,000 in 2023, $120,000 in 2022, and between $105,000-$110,000 in 2021.

Plaintiff currently works the "first shift," which spans from 6:30 a.m. to 3 p.m., Monday through Friday. Plaintiff has been on this shift for roughly ten (10) to fifteen (15) years.

Joe Hamm (hereinafter "Mr. Hamm") and Mr. Patterson were Plaintiff's direct supervisors during the period relevant to this action. Plaintiff also stated that Jim Thomas, Tech Service Manager, was Mr. Hamm and Mr. Patterson's direct supervisor during the relevant period. Defendant has employed Mr. Thomas for an estimated period of forty-seven (47) years.

Plaintiff states that he met Mr. Thomas in 1978. Plaintiff estimates that Mr. Thomas has been a supervisor since the 1980s and has held his current title for over twenty-five (25) years. Plaintiff states that Mr. Thomas is older than him and estimates him to be 67 or 68 years old.

In reference to Paragraph 53 of Plaintiff's Complaint, Plaintiff states that Mr. Thomas engaged in discriminatory conduct directed at Plaintiff on one

7

occasion during the relevant period. Plaintiff states that he adjusted vents/dampers in Room 103 because the pressure was low. After completing this task, Plaintiff went to the locker room, where Mr. Patterson and Nathan Keller said that Mr. Thomas sent them over to review his work. Plaintiff admits that he cannot remember if that's what they said verbatim, if anyone else was in the locker room at this time, or what time of day this took place. However, Plaintiff states that although he saw Mr. Thomas on the day of this incident, he did not have a conversation with Mr. Thomas concerning this incident.

Plaintiff stated that he believes that Mr. Thomas never sent anyone to check the work of a white Mechanic because "whenever they do a task, they complete the job and come back to the shop, and the rest of the guys are pretty much in the shop or in an assigned area." Plaintiff admits that he did not lose any pay, he did not lose his shift, he did not receive discipline or lose any benefit as a result of his work being checked.

In reference to Paragraph 53 of Plaintiff's First Amended Complaint, Plaintiff states Jim Duckett assigned him the task of installing shelves. Upon his completion of the task, Mr. Thomas came over and watched Plaintiff for several minutes (five (5) to ten (10) minutes)—acting like Mr. Thomas was looking at something else—but did not say anything. According to Plaintiff, he has never

8

witnessed Mr. Thomas watch anyone else "in that demeanor" When asked what Plaintiff meant by "in that demeanor," he stated that Mr. Thomas frustratingly watched him as if to say, "What are you doing or something like that." Plaintiff admits that Mr. Thomas never said that. Plaintiff admits that he did not lose any pay, he did not lose his shift, he did not receive discipline or lose any benefit as a result of Mr. Thomas watching him work on this occasion. In Paragraph 55 of Plaintiff's First Amended Complaint, he indicated that upon information and belief, Mr. Thomas provided erroneous and misleading information about him. Plaintiff states that he has no evidence that Mr. Thomas has provided anyone misleading information to other people. Plaintiff admits that he did not lose any pay, he did not lose his shift, he did not receive discipline, lose any benefit, or receive any change to the terms and conditions of his employment as a result of the allegation contained in paragraph 55 of Plaintiff's First Amended Complaint.

Concerning Paragraph 56 of Plaintiff's Amended Complaint, Plaintiff testified that Mr. Thomas would ask him, "Who told you to do that," referring to his work. Plaintiff alleged that he believed that Mr. Thomas's question was intended to question the integrity of Plaintiff's work. Plaintiff testified that he believes this incident occurred during the relevant period but could not recall precisely the date that it occurred. Plaintiff admitted that he did not receive

discipline, lose pay, lose his shift, or lose his seniority as a result of Mr. Thomas asking him, "Who told you to do that?" Plaintiff admitted that nothing concerning his terms and conditions of employment changed due to Mr. Thomas asking him, "Who told you to do that?"

Plaintiff admitted that he provided all the alleged examples of incidents that occurred during the relevant period identified by this Court—May 25, 2020, through December 23, 2020—to support his claims of race, color, and age discrimination. Plaintiff admitted that during the relevant period, he did not lose his shift. Plaintiff admitted that during the relevant period, he did not lose any benefits. Plaintiff admitted that during the relevant period, he was not suspended. Plaintiff admitted that during the relevant period, none of his terms and conditions of employment were changed.

Plaintiff was the Chief Shop Steward at the time of the investigation regarding the allegations contained in this suit. Plaintiff went on to confirm that as the Chief Shop Steward, he was aware that he had the right to have his union representative present during the investigation. However, Plaintiff admits that he declined to participate in the investigation without the presence of his attorney. During his deposition, Plaintiff stated that he followed up by informing the Company that he would be willing to discuss the matters at issue but never

10

received a response. However, the September 29, 2021, email with the subject line "Meeting request follow," shows that Julie Harpenau did respond to Plaintiff regarding his follow-up regarding the investigation.

## *Discussion*

When there is no direct evidence of discrimination, Title VII race-based discrimination claims are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011) ("[C]laims of discrimination ... are properly analyzed under the same legal framework whether brought under Title VII or ACRA."). Applying this framework to Plaintiff's race discrimination claim, he is required to make a *prima facie* showing that he: (1) is a member of a protected class; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination (for example similarly situated employees outside the protected class were treated differently). *Watson v. McDonough*, 996 F.3d 850, 856 (8th Cir. 2021) (quoting *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019)).

To establish a prima facie case of age discrimination Plaintiff must establish, by a preponderance of the evidence, the following four elements: "(1) she is over 40; (2) she was qualified for the position; (3) she suffered an adverse employment

action; and (4) substantially younger, similarly situated employees were treated more favorably." *Faulkner v. Douglas Cnty. Neb.*, 906 F.3d 728, 734 (8th Cir. 2018); see *Halsel v. Kimberly-Clark* Corp, 683 F.2d 285, 290 (8th Cir. 1982).

Whether premised on direct or circumstantial evidence, to defeat summary judgment on his discrimination claims, the non-movant must generate genuine disputes of material fact that he suffered an adverse employment action. See, e.g., *Towery v. Mississippi Cnty. Arkansas Econ. Opportunity Comm'n, Inc.*, 1 F.4th 570, 572–73 (8th Cir. 2021). Defendant asserts that Plaintiff cannot do so here, and the Court finds this issue is dispositive of Plaintiff's race, color, and age discrimination claims.

The Court concludes that no rational trier of fact would find that the record presented establishes Plaintiff suffered any adverse employment actions. An adverse employment action is one that "produces a material employment disadvantage." *Kerns v. Cap. Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999) (quotation omitted). "Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge." *Id*. (citation omitted). Here, the record evidence establishes Plaintiff suffered no adverse employment action. He was not discharged, he did not receive any pay cuts,

12

demotions or changes in his work environment. His job has remained constant throughout the relevant period. Plaintiff can make no showing of discrimination to raise any disputes of material fact.

## *Conclusion*

In sum, the Court finds Plaintiff has not disputed any of the facts presented by Defendant and cannot show any adverse employment action needed to avoid summary judgement.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 56], is **GRANTED**.

An appropriate Judgment is entered this same date.

Dated this 3rd day of April, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE